JOHN S. LEONARDO
United States Attorney
District of Arizona

ALISON S. BACHUS
Arizona State Bar No. 023884
JENNIFER E. GREEN
Arizona State Bar No. 018792
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
alison.bachus@usdoj.gov
jennifer.green@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | CR 12-523-001-PHX-DGC |
| v. | **PLEA AGREEMENT** |
| Billy Wayne Brymer, III, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, BILLY WAYNE BRYMER, III, hereby agree to dispose of this matter on the following terms and conditions:

**1. PLEA**

The defendant will plead guilty to Count 3 of the Second Superseding Indictment charging the defendant with a violation of Title 18, United States Code, Sections 924(c)(1)(A)(i, ii) and 2, Use of a Firearm During a Crime of Violence and Aid and Abet, a Class A felony offense; Count 5 of the Second Superseding Indictment charging the defendant with Bank Robbery and Aid and Abet, in violation of Title 18, United States Code, Sections 2113(a) and 2, a Class C felony offense; and Count 7 of the Second Superseding Indictment charging the defendant with Armed Bank Robbery and Aid and Abet, in violation of Title 18, United States Code, Sections 2113(a), (d) and (e) and 2, a Class B felony offense.

**2. MAXIMUM PENALTIES**

a. A violation of Title 18, United States Code, Section 2113(a), is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of 20 years, or both, and a term of supervised release of not to exceed 3 years. A violation of Title 18, United States Code,

Sections 2113(a), (d) and (e), is punishable by a maximum fine of $250,000.00, a minimum term of imprisonment of 10 years and a maximum term of imprisonment of 25 years, or both, and a term of supervised release of not to exceed 5 years. A violation of Title 18, United States Code, Section § 924(c), is punishable by a maximum fine of $250,000.00, a maximum term of life imprisonment, or both, and a term of supervised release of not to exceed 5 years. The term of incarceration for the violation of Title 18, U.S.C. § 924(c) must run consecutively to the term of imprisonment for any other offense, and the mandatory minimum sentence for a single violation of Title 18, U.S.C., § 924(c)(1)(A)(i, ii) is 7 years (84 months) imprisonment.

      b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

          (1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

          (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

          (3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

          (4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

      c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.**     **AGREEMENTS REGARDING SENTENCING**

      a.     <u>Stipulation</u> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant shall be sentenced to no less than 18 years (216 months) incarceration, and no more than 22 years (264 months) incarceration. The parties recognize that

this range is higher than the defendant's advisory Guideline range will likely be calculated, but agree that the higher range accounts for the breadth of the defendant's conduct.

      b.      Pursuant to the order entered by Maricopa County Superior Court Judge Joseph Welty on February 7, 2013, the defendant has been apprised of his indictment in Superior Court case CR 2012-007304-002. Although the Maricopa County Attorney's Office is not a party to this agreement, the United States and the defendant have been in contact with the Maricopa County Attorney's Office and understand that it will not object to the defendant's state sentence in case CR 2012-007304 being served concurrently to his sentence in the federal case (CR 12-523-001-PHX-DGC).

      c.      <u>Restitution</u> Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to make restitution to the victims of both the federal case in an amount to be determined by the Court at the time of sentencing but in no event more than $400,000.

      d.      <u>Acceptance of Responsibility</u> If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.** **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

      a.      The U.S. Attorney's Office will dismiss Counts 1-2, 4, 6, and 8 of the Second Superseding Indictment at the time of sentencing.

      b.      This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

//
//

5. **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

Providing the defendant's sentence is consistent with this agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c). The defendant acknowledges that if the Court has sentenced the defendant according to the terms of this agreement, this waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

//

7. **DISCLOSURE OF INFORMATION**

   a.   The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

   b.   Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

   c.   The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

   (1)   criminal convictions, history of drug abuse, and mental illness; and

   (2)   financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

   a.   The defendant acknowledges that the following property (hereinafter referred to as "Specified Property") is subject to forfeiture forfeit to the United States pursuant to Title 18, U.S.C. §§ 981(a)(1)(C) and 981(b)(1) and/or Title 28, U.S.C.§ 2461 and Title 21, U.S.C. § 853(f) as proceeds traceable to a violation of 18 U.S.C. § 2113(a) and (d) and 924(c), which constitutes a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7): any currency derived from the commission of the offenses, including, but not limited to, currency seized by law enforcement following the robbery on February 29, 2012, and items purchased with currency derived from the commission of the offenses, including a Louis Vuitton handbag and its contents, Louis Vuitton shoes, and a Fossil watch, which are currently in the lawful custody of the United States.

   b.   The defendant states that he is the sole and rightful owner of the Specified Property and that to the best of his knowledge no one else has any ownership or other interest in the property.

  c. The defendant consents to the entry of a preliminary order of forfeiture of the Specified Property prior to sentencing and a final order of forfeiture of the Specified Property at sentencing and judgment. At the time of the entry of the Court's judgment, any preliminary order of forfeiture shall automatically be made final and be incorporated into the sentence and judgment.

  d. The defendant admits that he has no interest in the following firearms, which were used in bank robberies in this case and are currently in the lawful custody of the United States: a Smith and Wesson Body Guard .380 caliber semi-automatic handgun, serial number EAV0728, and ammunition contained therein; a Glock 19 9mm semi-automatic handgun, serial number PUR969, and ammunition contained therein; and a Smith and Wesson Body Guard .380 caliber semi-automatic handgun, serial number EAV1549. The defendant hereby waives and abandons all right, title, and interest in the listed firearm, ammunition, and Specified Property. The defendant waives, releases, and withdraws any claim that he has made with respect to the firearm, ammunition, and Specified Property, and waives and releases any claim that he might otherwise have made to them in the future. The defendant consents to the destruction of the firearms, as well as the ammunition. The defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Government might take, in its sole discretion, to carry out the abandonment, disposition, and destruction of the firearm, ammunition, and Specified Property. The defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the firearms, ammunition, and Specified Property, including any such claim for attorney fees and litigation costs.

  e. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. If the Court imposes a schedule of

payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9. **ELEMENTS**

### Bank Robbery (and Armed Bank Robbery)

On or about the dates alleged in the Second Superseding Indictment, in the District of Arizona:

1. The defendant took money belonging to a financial institution;
2. The defendant used force and violence, or intimidation, in doing so;
3. The deposits of the financial institution were insured by the Federal Deposit Insurance Corporation (FDIC); and
4. For Armed Bank Robbery, the defendant intentionally made a display of force that reasonably caused the victim-teller(s) to fear bodily harm by using a dangerous weapon and the defendant forced the victim-teller to accompany him without consent of the victim-teller during the robbery. ~~and the defendant forced the victim-teller to accompany the defendant without the victim-teller's consent.~~ [handwritten: AJB cms2915]

### Use of a Firearm During a Crime of Violence

1. The defendant committed the crime of Armed Bank Robbery; and
2. The defendant either (A) used, carried, or brandished the firearm during and in relation to the crime; or (B) possessed a firearm in furtherance of the crime.

### Aiding and Abetting

1. The crime of Use of a Firearm During a Crime of Violence, Armed Bank Robbery or Bank Robbery was committed;
2. The defendant knowingly and intentionally aided, counseled, commanded, induced, or procured a person to commit use of a firearm during a crime of violence, armed bank robbery or bank robbery; and
3. The defendant acted before the crime was completed.

10. **FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

Between January 17 and January 21, 2012, I agreed with Joel Thomas, Jillian Bagley, Daniel Bagley, Jr., and Jeffrey Edwards to rob the Wells Fargo Bank located at 19450 North Sunrise Boulevard in Sun City, Arizona. Before the robbery, we met ~~at a restaurant~~ to discuss the details of how the robbery would occur. We agreed that the bank would be robbed by myself, Daniel Bagley, and Jeffrey Edwards. Joel Thomas provided information about the bank, and my role was to drive D. Bagley, and Edwards to the bank in my car, rob the bank with them, and then meet Thomas and J. Bagley where J. Bagley was waiting with D. Bagley's car.

On January 21, 2012, I traveled with my co-defendants listed above to Sun City. As agreed, I drove D. Bagley and Edwards to the bank while Thomas and J. Bagley waited nearby. When we arrived at the bank, Edwards entered the bank, followed by D. Bagley. Edwards was armed with a .380 caliber handgun that I had provided to him. He approached bank employee Brandon Calligaro about a safe deposit box and was escorted to that area. Once behind the teller line, Edwards demanded to go to the vault and pulled the handgun on the employee. The employee told Edwards he did not have access to the vault, and Edwards took him, at gunpoint, back to the teller line where two tellers, Bianca Orozco and Sharon Barker, were forced to give Edwards money. D. Bagley had left the bank before Edwards received the money from the tellers. After the tellers complied with Edwards' demands, Edwards fled the bank with me and D. Bagley in my car. ~~When~~ then met J. Bagley at D. Bagley's car and we made our getaway to my residence in Tempe, Arizona. We divided the proceeds of the robbery at my residence, and I received some of those proceeds. An audit conducted after the robbery determined that we had stolen a known amount of FDIC-insured currency.

On or about February 25, 2012, I ~~drove~~ David McQueen and Kenneth Brown to Surprise, Arizona, from Tempe, Arizona, in order for McQueen and Brown to rob a bank. At my direction, McQueen and Brown entered the Wells Fargo Bank located at 14505 West Grand Avenue in Surprise. McQueen approached the victim-teller and presented a note that demanded

8

money. Brown waited by the door. Intimidated, the victim-teller complied with McQueen's demands and provided him with money. McQueen and Brown then fled to bank to my vehicle, which was the getaway car. During the robbery, I was waiting at a nearby restaurant with a radio. After the robbery, I divided the proceeds with McQueen and Brown. An audit completed after the robbery showed that a known amount in FDIC-insured funds had been stolen.

On or about February 29, 2012, I drove in my car with co-defendant Ernest Lerma to the area of the Chase Bank located at 9790 West Peoria Road in Peoria, Arizona, in order to rob that bank. Co-defendant Joel Thomas was one of the employees of that Chase Bank, and he was to open the branch that morning with employee Eric Carlin. Carlin entered the bank per the bank's opening protocol, and Thomas gave Carlin the "all-clear" sign to unlock the branch. Unbeknownst to Carlin, I was armed with a handgun and ready to enter the bank when Carlin opened the door for Thomas. Thomas, however, was complicit with me and participating in the robbery, but posing as a victim. I then forced my way into the bank by pointing the firearm at Carlin, and I demanded to be taken to the vault. Carlin complied with my demands and accompanied me to the vault without his consent. At the vault, I demanded Carlin and Thomas fill a bag with money as I brandished the firearm. They complied with my demands, filling money from a safe and drawers in the vault. I then demanded the money from the ATM, but Carlin told me he could not access that money. I ordered Carlin and Thomas to the men's restroom at gunpoint and made them lie down on the floor with their faces down. Again, Carlin accompanied me without his consent. After ordering them to the ground and to wait there for five minutes, I fled the bank to Lerma, who was waiting in my car. Lerma drove us back to my residence in Tempe. I divided up the money between individuals involved in the robbery and J. Bagley. An audit conducted after the robbery showed that I had stolen a known amount of FDIC-insured currency.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

9

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

_3-15-13_
Date

_[signature]_
BILLY WAYNE BRYMER, III
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

_3-15-13_
Date

_[signature]_
CHARLES M. THOMAS
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

3/15/13
Date

ALISON S. BACHUS
JENNIFER E. GREEN
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

10/9/15
Date

DAVID G. CAMPBELL
United States District Judge